UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL SILER,

        Plaintiff,

    -v-                      9:19-CV-427

FLETCHER, RUSSELL, and
HOLLENBACK,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

MICHAEL SILER
Plaintiff, Pro Se
18-B-0821
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON. LETITIA JAMES          LAUREN ROSE EVERSLEY, ESQ.
New York State Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## ORDER ON REPORT & RECOMMENDATION

On April 10, 2019, *pro se* plaintiff Michael Siler ("Siler" or "plaintiff"), an inmate in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), filed this 42 U.S.C. § 1983 action alleging that Sergeant Fletcher, Corrections Officer Russell, and Corrections Officer Hollenback (collectively "defendants") subjected him to excessive force on February 8, 2019 while he was confined at Upstate Correctional Facility.

On March 4, 2021, defendants moved for summary judgment on the grounds that Siler failed to fully exhaust his administrative remedies in accordance with the requirements set forth in the Prison Litigation Reform Act ("PLRA"). Dkt. No. 54. According to defendants, plaintiff commenced this civil rights action *before* pursuing to completion an administrative appeal through DOCCS's Inmate Grievance Program ("IGP"). *Id.*

On December 17, 2021, U.S. Magistrate Judge Thérèse Wiley Dancks advised by Report & Recommendation ("R&R") that defendants' motion for summary judgment be denied. Dkt. No. 62. As relevant here, Judge Dancks concluded that Siler had "raised a genuine issue of material fact as to the availability of administrative remedies." *Id.*

Defendants have filed objections. Dkt. No. 65. Upon *de novo* review of those objections, the R&R will be accepted and adopted in all respects. 28 U.S.C. § 636(b)(1)(C). Although exhaustion under the PLRA is mandatory, in *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court emphasized that an inmate is only obligated to exhaust the administrative remedies that were actually "available" to him. *Id.* at 638.

In *Ross*, the Supreme Court explained that an administrative remedy may be deemed "unavailable" when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643–44.

The Supreme Court's holding in *Ross* upset the apple cart in the Second Circuit, which had previously adopted its own framework for determining when PLRA exhaustion should be excused. *See Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). In an attempt to clarify how the lower courts should read and apply the unavailability analysis set out in *Ross*, the Second Circuit took up the PLRA exhaustion requirement in a case called *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016).

In *Williams*, the *pro se* inmate-plaintiff filed a 42 U.S.C. § 1983 action alleging that various corrections officers "violated his Eighth Amendment rights when they brutally beat him for talking back to another officer when he was an inmate at Downstate Correctional Facility." *Id*. at 119.

The *Williams* plaintiff, who was confined in Downstate's Special Housing Unit ("SHU") in the days following the excessive force incident, alleged in his pleading that he had given a written grievance "to a correction officer to

forward to the grievance office on his behalf, in accordance with DOCCS grievance procedures that apply to inmates in the SHU." *Williams*, 829 F.3d at 120–21. The plaintiff further alleged that "[h]e never received a response to the grievance" because "the correction officer in the SHU never filed it for him." *Id.* at 121.

Importantly for present purposes, the *Williams* plaintiff did not try to appeal the unanswered grievance through the IGP process but went ahead and filed his § 1983 action instead. 829 F.3d at 121. Thereafter, the defendants moved in the district court to dismiss the complaint based on the inmate-plaintiff's failure to fully exhaust under the PLRA, since he had admittedly never filed any appeal from the unanswered grievance. *Id.*

The district court granted the motion to dismiss, reasoning that even if the plaintiff's "grievance had never been filed, he still could have appealed the grievance to the next level because [DOCCS] regulations allow an appeal in the absence of a response." *Williams*, 829 F.3d at 121.

The Second Circuit reversed. Writing for a unanimous panel, Chief Judge Katzmann rejected the defendants' claim that the inmate-plaintiff should have attempted to appeal the unfiled, unanswered grievance. *Williams*, 829 F.3d at 124. Although it recognized that various IGP provisions might "technically" be read together to permit an inmate to appeal from an

unanswered grievance, the panel concluded that DOCCS regulations "only contemplate appeals of grievances that were actually filed."  *Id*.

Applying the Supreme Court's fresh guidance on unavailability, the *Williams* panel held that DOCCS's current regulations left the process to appeal an unfiled grievance "prohibitively opaque, such that no inmate could actually make use of it."  829 F.3d at 126.  Accordingly, the panel held that the inmate-plaintiff had complied with the PLRA because he had "exhausted all administrative remedies that were available to him."  *Id*. at 126.

*Williams* was decided on a motion to dismiss.  But the Second Circuit has endorsed the same kind of plaintiff-friendly exhaustion analysis on summary judgment.  *See, e.g.*, *Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) (summary order) (applying *Ross* and *Williams* in the summary judgment context and cautioning lower courts that the procedural posture does not change the relevant analysis).

Against this backdrop, Judge Dancks relied on *Williams* to conclude that Siler had created a fact question about whether administrative remedies were unavailable to him at Upstate.  As relevant here, plaintiff testified under oath that on February 11, 2019, two days after the alleged date of the excessive force incident, he was confined in the SHU at Upstate, where he claimed to have given a written grievance about defendants' use of excessive force to a corrections officer (who "took it and put it in the mail").  According

- 5 -

to plaintiff, he never received any notification confirming that this grievance had been received in the inmate grievance office at Upstate.  Because of that, he filed a second grievance and then two follow-up letters to the Superintendent at Upstate.  He did not receive any response.

Viewed in the light most favorable to him, Siler's testimony establishes that his first grievance went unanswered because it went unfiled.  *See* R&R, Dkt. No. 62 at 14 (finding that plaintiff's ability to successfully navigate the grievance system at a different DOCCS facility "could suggest that absent interference at Upstate, he could comply with the [grievance program]").  In light of the Second Circuit's holding in *Williams*, nothing more is required of plaintiff to defeat summary judgment.

Defendants object to this conclusion by focusing on Siler's other filings and letters, including a third grievance that he eventually managed to file after he was transferred to Clinton.  In defendants' view, these filings distinguish the facts of this case from those in *Williams*—"Plaintiff's decision to actively engage in the grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it."  Defs.' Obj. at 5 (cleaned up).

Those additional filings certainly make for a confusing timeline.  But they operate as red herrings in this fact pattern.  Siler has testified under oath that, on February 11, 2019, while confined in the SHU at Upstate C.F., he

- 6 -

gave a written grievance to a corrections officer to be mailed out. For whatever reason, that grievance went unfiled. Thereafter, plaintiff sent letters to the Superintendent at Upstate but failed to receive a response. And when he was moved to Clinton, copies of his first grievance and follow-up letters were lost. Taken together, these facts are sufficiently similar to the ones alleged in *Williams* so as to warrant the same outcome.

In reaching this conclusion, the Court recognizes that subsequent Second Circuit opinions have sown some doubt in the lower courts about the reach of *Williams*. For instance, in *Cicio v. Wenderlich*, a panel of the Second Circuit rejected on summary judgment an inmate-plaintiff's argument that he was not obligated to pursue any further administrative appeal under DOCCS's IGP after he "received no response to the grievance he purportedly filed." 714 F. App'x, 96 97–98 (2d Cir. 2018) (summary order).

At first blush, that outcome seems hard to square with *Williams*. Perhaps the court took it as an established fact that the *Cicio* plaintiff had actually filed the grievance in question. *But see* 714 F. App'x at 97 (referring to the grievance as "purportedly" filed). Perhaps, unlike *Williams*, it is because the plaintiff in *Cicio* was not being held in the SHU, where DOCCS grievance regulations operate differently. *See id.* Or perhaps the *Cicio* panel just thought that *Williams* should be reserved for "extraordinary circumstances." 829 F.3d at 119. After all, in addition to being held in the

SHU immediately after the incident, the *Williams* plaintiff was transferred to another facility shortly after he tried to filed his grievance. *Id*. at 126.

Ultimately, the answer is irrelevant. Speculation about the internal logic of a summary order cannot overcome on-point precedent from a published decision. That is especially so in this case, where—just as in *Williams*—Siler was held in SHU and transferred to another facility a short time after he attempted to file his first grievance.

As a final matter, defendants have requested an exhaustion hearing in the event the Court overrules their objections to the R&R. Defs.' Obj. at 6–7. That request will be denied because an exhaustion hearing is unwarranted under the particular circumstances of this case. *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: February 10, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge